272 N.J. Super. 280 (1994)
639 A.2d 1120
JEAN PUSO, PLAINTIFF-APPELLANT,
v.
JOHN KENYON, SOOK Y. CHOI, ABC CORPORATION NO. 1, ABC CORPORATION NO. 2, ABC CORPORATION NO. 3, JOHN DOE NO. 1, JOHN DOE NO. 2, JOHN DOE NO. 3 (SAID NAMES BEING FICTITIOUS AND UNKNOWN AT THIS TIME, JOINTLY, SEVERALLY OR IN THE ALTERNATIVE), DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 25, 1994.
Decided March 10, 1994.
*282 Before Judges PRESSLER, DREIER and KLEINER.
Neil B. Fink argued the cause for appellant (Fink & Fink, attorneys; Alfred J. Cozzi, on the brief).
William A. Wenzel argued the cause for respondent Sook Y. Choi (Haggerty, Donohue & Monaghan, attorneys; Mr. Wenzel, of counsel and on the brief).
*283 Respondent John Kenyon did not file a brief.
The opinion of the court was delivered by KLEINER, J.S.C. (temporarily assigned).
This is a verbal threshold case in which plaintiff, Jean Puso, appeals from a summary judgment dismissing her personal injury automobile negligence complaint against defendant, Sook Y. Choi. The motion judge concluded, after oral argument, that plaintiff, who sustained soft tissue injuries and a scar five centimeters in length behind her knee on the right calf, had failed to make an adequate showing of objective criteria as to the soft tissue injury to warrant a jury trial and that plaintiff's scar did not constitute "significant disfigurement" within the purview of N.J.S.A. 39:6A-8a as a matter of law.
Plaintiff is a twenty-eight year old bookkeeper and the owner of an automobile registered in New Jersey. On September 9, 1989, she was a passenger on a motorcycle owned and operated by defendant, John Kenyon, which was involved in a collision with an automobile owned and operated by defendant, Choi. Plaintiff's complaint for non-economic loss asserted against Kenyon is not affected by this opinion.
Plaintiff came under the care of her treating physician, Dr. Frank J. Noonan, on September 15, 1989, complaining of limitation of motion as to her cervical and lumbar spine. Her physician noted that plaintiff had sustained a laceration on the right calf which had been surgically repaired by sutures in a hospital emergency room after the collision and had been evaluated by Dr. Gregory E. Rauscher, a plastic surgeon, on September 13, 1989.
The initial orthopedic-type examination revealed "tenderness and muscle spasm of the paravertebral muscles of the lumbar spine. There was tenderness of the cervical spine, there was tenderness and hematoma of the right hip."
Dr. Noonan requested x-rays of the cervical and thoracic spine and of the right hip, which were all negative for fracture. His *284 concluding diagnosis was "cervical sprain, thoracic sprain, post concussion syndrome and a large wide-shaped laceration about three inches long ... transversely on the right calf."
Plaintiff continued to see her treating physician quite frequently until May 30, 1990.[1] Although she was not released from Dr. Noonan's care, she did not return for any additional treatment or evaluation and did not submit any other proof of treatment subsequent to that date. We infer that plaintiff, in fact, received no additional treatment after May 30, 1990.
Dr. Noonan's report of June 11, 1990 indicates:
Based upon the history of this case, my examination and tests performed upon the patient, together with the patient's present complaints, I have concluded that the patient has suffered a permanent consequential limitation of use of a bodily member.
I have concluded that the patient has suffered a permanent significant limitation of use of body function or system of the neck and lower back.
The only facts utilized by the treating doctor as the basis of this conclusion are the following:
In my last examination of the patient, the patient complained of pain in the neck and the lower back. My examination of the patient showed she still lacked 10 degrees of flexion of the cervical spine and 10 degrees of extension. She lacked 5 degrees of rotation right and 15 degrees of rotation left. Motion studies of the lumbar spine revealed that she had a 15 degree loss of flexion and 10 degree loss of extension. She lacked 10 degrees of rotation right and 10 degrees of rotation left.
The seminal case analyzing N.J.S.A. 39:6A-8a is Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992), which articulated two standards for determining whether an injury meets the statutory threshold, one objective and the other partially subjective and partially objective. Polk v. Daconceicao, 268 N.J. Super. 568, 575, 634 A.2d 135 (App.Div. 1993). Under the objective standard, plaintiff must establish her claim by "objective, credible medical evidence." Subjective complaints of pain alone will be insufficient to provide this proof. Oswin v. Shaw, supra, 129 N.J. at 319-20, 609 *285 A.2d 415. As noted in Oswin, the treating physician's report must be scrutinized for "objective proof of ... injury and consequent disability." Ibid. Even limitations in range of motion are insufficient "unless the restricted mobility is verified by physical examination and observation." Id. at 320, 609 A.2d 415. The "parroting" of statutory words by the physician as to medical conclusions is not of assistance to the court in analyzing whether a plaintiff has carried her burden of proof. Ibid.
Were the plaintiff's claim limited to her soft tissue cervical and lumbar injuries, we would have little difficulty in concluding that the trial court was correct in granting summary judgment based on the failure to establish sufficient proof of the objective standard required by Oswin v. Shaw, id. Although plaintiff's brief on appeal argued to the contrary, plaintiff abandoned her arguments on this crucial issue at oral argument and advised the court that she would not attempt to persuade the court that the trial court had improperly construed Oswin v. Shaw, supra. Plaintiff, however, asserted that summary judgment was improvidently granted due to the presence of the permanent scar on her calf behind her right knee.
The presence of this scar was addressed by the motion judge. The evidence considered consisted of a report of Dr. Gregory E. Rauscher, Chairman of Plastic Surgery at the University of Medicine and Dentistry of New Jersey. Dr. Rauscher saw the plaintiff on four occasions: initially on September 13, 1989; on September 21, 1989, when her sutures were removed; on October 10, 1989; and on August 27, 1990 for a final evaluation. As noted during the final evaluation:
[T]he patient had a permanent scar behind the right knee which measured 5 cm. transversely and varied in width from a minimum of 3 mm. to a maximum of 2 cm. By means of elective excision, revision it is quite likely that improvement in this scar can be obtained. Undoubtedly, the patient will require a splint for 2-3 weeks to prevent any excessive knee movement.[2]
*286 We note that Dr. Rauscher did not opine as to the anticipated degree of improvement of the scar which excision might provide. As of the date of the motion for summary judgment, excision had not been performed.
The motion judge concluded:
The medical reports submitted in connection with the motion, viewed in light of Oswin v. Shaw, 129 N.J. 290[, 609 A.2d 415] (1992), are not sufficient to establish a genuine issue of material fact. The reports refer to contusions, bruises, scrapes and a 5 cm. laceration which apparently resulted in a 5 cm. scar behind her knee. Although the subjects of objective medical findings, these injuries do not, as a matter of law, constitute any of the nine types of injuries described in N.J.S.A. 39:6A-8.
The verbal threshold, N.J.S.A. 39:6A-8a, is established in New Jersey's no-fault and automobile insurance statute, the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to-35, originally enacted in 1972. As originally enacted, the statute permitted lawsuits for non-economic losses only where the insured had sustained an injury within one of nine categories of injuries delineated in N.J.S.A. 39:6A-8a, which included "permanent significant disfigurement," now commonly designated as "type three" injury. Oswin v. Shaw, supra, 129 N.J. at 295, 315, 609 A.2d 415.
The original act was vastly modified by the passage of the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984, L. 1983, c. 362. Thereafter, the original act was itself specifically amended September 8, 1988, effective January 1, 1989.
The legislative history of the 1988 amendment is encompassed within Senate Labor, Industry and Professions Committee Statement to S-2637 (June 16, 1988). The proposed bill was conditionally vetoed by then-Governor Thomas H. Kean, who issued a statement describing what now constitutes New Jersey's no-fault insurance law:
The verbal threshold contained in this recommendation is patterned after that in force in New York State. (See New York Insurance Law §§ 5102, 5104). This verbal threshold specifically sets forth those injuries which will be considered "serious." Lawsuits for non-economic injuries, such as pain and suffering, will be allowed for these enumerated "serious injuries" only. It is my intention that the *287 term "serious injury," as defined in this recommendation, shall be construed in a manner that is consistent with the New York Court of Appeals' decision in Licari v. Elliot[t], [[52 N.Y.2d 230, 455 N.Y.S.2d 570,] 441 N.E.2d 1088 (1982)]. Whether a plaintiff has sustained a "serious injury" must be decided by the court, and not the jury. Otherwise, the bill's essential purpose of closing the courthouse door to all lawsuits except those involving bona fide serious injuries will be diluted and the bill's effectiveness will be greatly diminished. In addition, strict construction of the verbal threshold is essential; any judicial relaxation of this plain language will impede the intent of maintaining the substantial benefits of no-fault at an affordable price.
[Governor's Reconsideration and Recommendation Statement, Senate No. 2637 at 3-4 (Aug. 4, 1988).]
One change resulting from this amendment was the modification of the third category of exempt injuries. The original statute included the exemption, "permanent significant disfigurement." The 1988 amendment changed this language to "significant disfigurement." Neither statute defined the word "significant"; however, it is clear that the word "significant" is used synonymously with the phrase "serious injury."
As pointed out by Justice Clifford in Oswin, supra, 129 N.J. at 315-16, 609 A.2d 415:
[U]nlike the New York statute, which requires "serious injury," New Jersey's no-fault statute does not expressly use that term, requiring only that the injury fit one of the specified types. The distinction is of some moment only because the New York statute defines "serious injury" with a list of nine types of injury that is identical to the list used in the New Jersey statute; a plaintiff who sues under the New York statute merely alleges a "serious injury," often without specifying the type of injury. Because the New Jersey no-fault statute is based on New York's, we use the standards set in Licari, supra, 455 N.Y.S.2d 570, 441 N.E.2d 1088, for evaluating plaintiff's injuries.
In Licari the New York Court of Appeals evaluated only two of the injury types: "significant limitation of use of a body function or system" and the 90/180-day requirement. In respect of the first category, the court said:
[T]he word "significant" as used in the statute pertaining to `limitation of use of a body function or system' should be construed to mean something more than a minor limitation of use. We believe that a minor, mild or slight limitation of use should be classified as insignificant within the meaning of the statute.
[Id. 455 N.Y.S.2d at 573, 441 N.E.2d at 1091.]
We note that the word "significant" is only used twice in N.J.S.A. 39:6A-8a, in types three and eight, and the word "type" *288 does not appear in the actual statute but has its derivation in Oswin v. Shaw, supra, 129 N.J. at 315-16, 609 A.2d 415.

N.J.S.A. 39:6A-8a restricts the recovery of noneconomic losses to nine types of injuries:
....
Type 3: significant disfigurement;
....
Type 8: significant limitation of use of a body function or system.
[Id. at 314-15, 609 A.2d 415.]
As noted, Licari v. Elliott, supra, 455 N.Y.S.2d at 573, 441 N.E.2d at 1091, defined "significant" as meaning "something more than ... minor." As that construction of "significant" was applicable to a "type eight" injury, we find it appropriate to again refer to the decisions in New York to discern whether the word "significant" is construed differently in the context of "significant disfigurement."
In Agudelo v. Pan American World Airways, Inc., 118 Misc.2d 186, 460 N.Y.S.2d 416, 418-19 (1983), the court concluded:
Although no New York case has discussed or defined the meaning of a "significant disfiguring" injury in connection with a no-fault case, the word disfigurement is used in our State's Workers' Compensation Law (§ 15, subd. 3, par. t(1) wherein it is provided that the "board may award proper and equitable compensation for serious facial and head disfigurement"). As used in the context of a claim for workers' compensation benefits, the term "disfigurement" has been defined as "that which impairs or injures the beauty, symmetry, or appearance of a person; that which renders unsightly, misshapen, or imperfect, or deforms in some manner. .. ."
....
Thus, refining the case law definition of the word "disfigurement" as used in the workers' compensation cases, cited supra, "an injury is disfiguring (under the `no-fault' law) if it alters for the worse the plaintiff's natural appearance. A disfigurement is significant if a reasonable person viewing the plaintiff's (face) in its altered state would regard the condition as unattractive, objectionable, or as the subject of pity or scorn", 1 PJI § 2:88B, supplement, p. 93.
[Citations omitted.]
Under our original no-fault statute, the meaning of "permanent significant disfigurement" was thoroughly analyzed in a comprehensive *289 discussion in Falcone v. Branker, 135 N.J. Super. 137, 342 A.2d 875 (Law Div. 1975). The court also relied upon the law of workers' compensation in other jurisdictions and concluded, at 144-45, 342 A.2d 875:
The apparently now classic definition of the phrase "permanent serious disfigurement" in a compensation setting was made in Superior Mining Co. v. Industrial Commission, 309 Ill. 339, 141 N.E. 165 (1923):
* * * The act does not provide compensation for every mark or scar, nor for every disfigurement. A disfigurement is that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner. Before compensation can be awarded under the Workmen's Compensation Act there must be a disfigurement, and that disfigurement must be both permanent and serious. It was certainly not intended under this provision to authorize compensation for every trifling mark that could be discovered by the closest inspection. * * *
[141 N.E. at 166]
In Falcone, Judge Walsh, utilizing this definition, carefully described the scars of the plaintiff:
Turning now to the scars which plaintiff asserts are permanent significant disfigurements, the court finds that plaintiff's facial scar is near, or on the tip of the nose, approximately 1/4 inch long; extremely thin; the same color as the surrounding skin, and barely noticeable at a three-foot distance, even when one knows where to look. The scar on the doctor's leg is elliptical in shape, somewhat like a quarter moon, about 1 1/2 inches long, a quarter inch wide at most, located 2 to 2 1/2 inches below the kneecap, and basically the color of the surrounding skin, although possibly a shade darker and shiny and smooth as in the nature of scar tissue with no hair growing on it. The court also notes that in the surrounding calf area of the 66-year-old plaintiff were varicosities more noticeable and unsightly than the scar, which was just visible from 12 feet if one knew where to look. Neither scar was ever sutured; the leg scar healing naturally after application of cold compresses.
[Id. 135 N.J. Super. at 148, 342 A.2d 875.]
Judge Walsh concluded:
Applying the case law cited above to the facts at hand, the court holds that although plaintiff has suffered scarring which appears to be permanent in nature (although that is not decided as a fact), the court does not believe that it is of the significant nature needed to override the tort exemption of our No Fault Law. N.J.S.A. 39:6A-8. This court believes the words of the court in General Motors Corp. v. Shannon, supra, 155 A.2d at 238, [(1959)], are most descriptive of this court's attitude towards plaintiff's scars:
I can think of no form of activity, social, economic, or otherwise, in which the claimant might indulge, and be subject to embarrassment by the presence of [these] small scar[s].

*290 [Id. at 150, 342 A.2d 875.]
In Oswin v. Shaw, supra, the court was not only obliged to determine definitions for the types of injury delineated in N.J.S.A. 39:6A-8a, but was also required to articulate the standard to be utilized in determining which injuries would be deemed to meet the tort threshold. "A plaintiff must show a nexus between the injury and the disability. The injury by itself does not fulfill the statutory requirement; rather, the resultant loss and disability are the key." Id. 129 N.J. at 318, 609 A.2d 415.
The court did not articulate this standard for all of the exempt injuries, and in fact recognized that the definition borrowed from Licari v. Elliott, supra, had been developed in Licari only as to type eight and type nine injuries.
In the New Jersey statute, type one (death); type two (dismemberment); type four (fracture); and type five (loss of a fetus) need no definition. These types define themselves.
The need for definition arises only with type three (significant disfigurement); type six (permanent loss of use of a body organ, member, function or system)[3]; type seven (permanent consequential limitation of use of a body organ or member); type eight (significant limitation of use of a body function or system); and type nine (medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially usual and customary daily activities).
Oftentimes there is a substantial overlap between types six, seven and eight. This overlap is evident in the description of claimed injuries as discussed in Dabal v. Sodora, 260 N.J. Super. 397, 616 A.2d 1297 (App.Div. 1992); Phillips v. Phillips, 267 N.J. Super. 305, 631 A.2d 564 (App.Div. 1993); Polk v. Daconceicao, 268 N.J. Super. 568, 634 A.2d 135 (App.Div. 1993); Foti v. Johnson, *291 269 N.J. Super. 198, 635 A.2d 104 (App.Div. 1993). We are satisfied that the definition adopted by Oswin, which specifically applied to a type eight injury and utilized the Licari definition which itself applied to a type eight and nine injury, is the appropriate definition for use in evaluating type six and type seven injuries. The use of the word "significant" in type three (significant disfigurement), however, does require a different qualitative analysis.
The court conceives that every scar may be perceived subjectively by the scar victim as being "unattractive, objectionable, or the subject of pity or scorn." Agudelo v. Pan American World Airways, Inc., supra, 460 N.Y.S.2d at 419. However, as noted in Oswin, supra, 129 N.J. at 319-320, 609 A.2d 415, the test is "objective proof of ... injury and consequent disability"; it is not a subjective standard. The court in Falcone v. Branker, supra, 135 N.J. Super. at 152, 342 A.2d 875, analyzed this particular issue and concluded, "From an objective, empirical standpoint, the appearance, coloration, existence and size of the plaintiff's scars are undisputed matters of fact." These factors, along with shape, characteristics of surrounding skin, the remnants of the healing process, and the factors which may be developed as being cosmetically important on a case-by-case basis, are all objective factors which may be utilized by the court in considering whether the scar is significant in a summary judgment motion in a verbal threshold case. Presumably many scars will not require judicial analysis, e.g. hypothetically a five inch scar on the face of a twenty-one year old professional model or, as in Falcone v. Branker, id., a one and one-half inch scar below the kneecap of a sixty-six year old physician. Those scars which are subject to judicial analysis on a tort threshold motion must be scrutinized objectively by the court.
In Falcone, Judge Walsh properly articulated a requirement that a plaintiff intending to resist a motion for summary judgment as to a scar injury must appear in court on the return day of the motion. Obviously a personal appearance before the court, either in open court or in camera, will be the optimum. That requirement in particular cases should be relaxed to accommodate *292 geographical, financial or other medical considerations which render an in-court appearance impractical or otherwise prohibitive. In lieu of a personal appearance, professional-quality photographs authenticated as to date or a professional-quality videotape may be sufficiently reliable for submission to the court. The court's observations, which should in every case be articulated, as in Falcone, id. at 148, 342 A.2d 875, will serve as the predicate for a determination whether the scar is objectively significantly disfiguring so as to defeat defendant's motion for summary judgment. As with the type six, seven or eight injury, the favorable tort threshold determination will not relieve a plaintiff of the obligation to prove at trial, to the trier of the fact, that the scar is a "significant disfigurement." Oswin v. Shaw, supra, 129 N.J. at 313-14, 609 A.2d 415; Foti v. Johnson, supra, 269 N.J. Super. at 202, 635 A.2d 104.
In this case, the trial court concluded that the plaintiff's scar did not meet the tort threshold. However, the record on appeal does not reflect whether the motion judge actually saw the scar on the return day of the motion, nor does it reflect whether authenticated recent photographs of the scar were submitted to the judge for evaluation. Although the judge did cite Oswin v. Shaw, supra, the court did not refer to Falcone v. Branker, supra, nor Agudelo v. Pan American World Airways, Inc., supra. The absence of a sufficient record prevents appropriate appellate review and accordingly, the order of summary judgment must be reversed and the motion must be reargued on remand.
At oral argument a question was posed as to the applicability of the concept of partial summary judgment on tort threshold issues where some injuries meet the tort threshold and other injuries, if evaluated separately, do not meet the tort threshold.
Plaintiff's counsel urges that we adopt the holding of Prieston v. Massaro, 107 A.D.2d 742, 484 N.Y.S.2d 104 (App.Div. 2 Dept. 1985), and Katzman v. Derouin, 109 A.D.2d 1086, 487 N.Y.S.2d 230 (App.Div. 4 Dept. 1985), to the effect that once a prima facie case of serious injury has been established, plaintiff is *293 entitled to present its claim as to all injuries sustained in an automobile accident to the trier of fact, including those injuries which alone would not have satisfied the tort threshold requirement.
In Katzman v. Derouin, id., the defendant argued that partial summary judgment should have been granted limiting the plaintiff's proofs as to injuries to the left thumb, hand, and wrist which met the tort threshold but excluding all proof as to injuries to plaintiff's neck, back and urinary tract which did not meet the threshold. The New York court concluded:
There is nothing in the statute, in the policies underlying its enactment, or in the case law giving support to the defendant's position.
[Id. at 1086, 487 N.Y.S.2d 230.]
Noting that the New York statute was in derogation of the right to sue for injuries at common law, the court declared that the statute must be strictly construed:
Had the Legislature intended to permit trial of only those injuries which standing alone can meet the threshold, it would have included language to that effect in the statute.
[Id. at 1087, 487 N.Y.S.2d 230.]
We agree with the conclusion reached by the New York courts and find that this conclusion is consistent with N.J.S.A. 39:6A-8a. Our statute exempts tortfeasors from suit for noneconomic loss unless a tort claimant has sustained "a" personal injury which falls within the nine enumerated types of injury delineated in the statute. The use of the word "a" clearly reflects a legislative intent that a singular injury meeting the tort threshold will permit a claimant to sue for noneconomic loss causally related to all injuries sustained in an automobile accident.
On remand, if the motion judge determines that plaintiff's scar does not meet the tort threshold, summary judgment shall be entered for defendant. If the court determines that plaintiff's scar does in fact meet the tort threshold, then plaintiff may present proof as to all of her injuries to the trier of fact. This *294 conclusion is consistent with Oswin v. Shaw, supra, 129 N.J. at 313-14, 609 A.2d 415:
We hold that once a court determines that evidence bearing on a plaintiff's injuries could, if believed by the factfinder, satisfy the statutory verbal-threshold requirement, any disputed issues regarding the nature and extent of those injuries must be decided by the jury. Of course, in the absence of any factual dispute the court shall resolve the question of whether plaintiff's injuries meet the verbal threshold. Therefore, if the plaintiff moves for a partial summary judgment on the verbal-threshold issue and the court resolves that question in the plaintiff's favor  that is, the trial court determines as a matter of law that under no view of the medical evidence could a factfinder conclude that the plaintiff had failed to meet the requirements of at least one of the verbal-threshold categories  then the jury's task (assuming it finds liability in the plaintiff's favor) is limited to a determination of the noneconomic losses.
The order for summary judgment is reversed and the matter is remanded to the trial court for appropriate proceedings in accordance with this opinion.
NOTES
[1] Plaintiff was evaluated on November 14, 1989 by a neurologist and on November 16, 1989 by an orthopedist. The medical evaluations confirm the plaintiff's injury but are not helpful in evaluating the issue of permanency.
[2] The balance of this medical report discussed the surgical and hospital expenses to be incurred if excision were to be performed.
[3] There are certain injuries which are type six injuries which do not require definition, e.g. quadriplegia or other paralysis. There may also be other injuries which are placed within the categories, type six, type seven or type eight which by their very nature will not require a definition.