724 A.2d 876 (1999)
319 N.J. Super. 79
Michael OSLACKY and Patricia Oslacky, Plaintiffs-Appellants,
v.
BOROUGH OF RIVER EDGE, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 1999.
Decided March 9, 1999.
Barry S. Kantrowitz, Chestnut Ridge, NY, for plaintiffs-appellants (Kantrowitz, Goldhamer & Graifman, attorneys; Reginald H. Rutishauser, on the brief).
Ian C. Doris, Roseland, for defendant-respondent (Harwood Lloyd, attorneys; Thomas A. Keenan, Hackensack, of counsel; Christine M. Vanek, Oradell, on the brief).
Before Judges BROCHIN and KLEINER.
The opinion of the court was delivered by *877 KLEINER, J.A.D.
This appeal raises two separate issues. First, we must determine when and under what circumstances an injured plaintiff may recover damages for "permanent disfigurement" under the New Jersey Tort Claims Act ("the Act"), N.J.S.A. 59:9-2(d). Second, we must determine whether the Law Division properly granted summary judgment to defendant Borough of River Edge on plaintiff Michael Oslacky's complaint[1] alleging "permanent loss of a bodily function" under the Act. Ibid.

I
On November 8, 1994, plaintiff, a thirty-six-year-old Oradell police officer, was engaged in a night-time handgun qualification exercise required by his employer. Plaintiff and other police officers seeking handgun qualifications were using the firing range of defendant Borough of River Edge. One of the other police officers fired a handgun. The discharged bullet apparently struck a target backdrop and a bullet fragment ricocheted, striking plaintiff in the head severing his left temporal artery. Plaintiff underwent emergency trauma surgery during which the temporal artery was tied. X-rays and CAT scans confirmed that the bullet fragment had lodged in and remained embedded in plaintiff's head within the connective muscle tissue of plaintiff's left temporomandibular joint ("TMJ").
Two weeks thereafter, on November 21, 1994, plaintiff, who complained of persistent headaches and jaw pain, consulted Dr. Michael B. Sisti, a neurosurgeon. Because of dangers inherent in the operative procedure to remove the bullet fragment, Dr. Sisti recommended that the bullet fragment remain, but suggested that plaintiff be observed to guard against bullet fragment migration, infection, or toxic lead side effects.
On November 20, 1995, plaintiff returned to Dr. Sisti. A report of that examination noted, in part:
[The] shrapnel fragment is lodged above the left temporal bone within the temporalis muscle itself. Over the year that the patient has had the bullet fragment within his skull, he has had 3 to 4 episodes per week of tenderness and headache at the site of the shrapnel injury. He had to go up a hat size as even pressure from his police officer cap would irritate this area. He has also noticed exercise headaches in the left temporal area and he is no longer able to sleep on the left side of his head.
....
Undoubtedly, the headaches, tenderness and discomfort the patient has is related to the bullet fragment in the left temporalis muscle. As this appears to be getting progressively worse over time, and is altering the patient's lifestyle and physical activities, and due to the low risk of surgical removal of this fragment, I would recommend that if the patient wishes, the fragment be removed....
Based on Dr. Sisti's advice, plaintiff, on April 17, 1996, underwent a stereotactically guided left temporal minicraniotomy. Despite this surgery, plaintiff alleges that he continues to have the same symptoms he had prior to surgery, i.e., persistent headaches, persistent pain in his left jaw, an inability to wear a correct hat size, and an inability to sleep on the left side of his head. On a further evaluation conducted September 18, 1997, Dr. Sisti opined that plaintiff's "main symptoms pain and discomfort in the left temporal area are undoubtedly due to the trauma of the gunshot wound and the surgical procedure to remove it." (emphasis added).
Defendant's motion for summary judgment was predicated upon its contention that plaintiff was barred from recovering damages for pain and suffering due to the limitation embodied in N.J.S.A. 59:9-2(d).[2] In response, *878 plaintiff's counsel filed a certification contending, in part, that plaintiff has the following permanent injuries, loss of bodily function, and permanent disfigurement:
(a) his temporal artery struck by a bullet was tied off during emergency surgery so that bodily function has been lost permanently;
(b) numbness on the left side of the head...;
(c) a permanent scar on his head measuring from one to two inches in length, located between the left jawbone and ear, which are due to the injury and vertical incisions of two operations;
(d) a lump or bump of scar tissue directly under the skin in the area where the surgical incisions were made, which can always be felt, and is very sensitive and painful to anything that may touch or rub it;
(e) severe, throbbing pain about two to three times each week, always beginning with a throbbing and burning feeling localized in the left side of his head at the area of the injury and incision, and accompanied by shooting pains from the area down the cheek bone into what feels like his inner left ear; after about ten or fifteen minutes, the throbbing pain increases to include the entire left half of his head; and these headaches almost always last from four to six hours or longer....
(f) head pain [that] sometimes occurs without warning, sometimes without apparent cause, and also triggered by touch, contact or rubbing of anything against the left side of the head; when he sleeps he will awake in excruciating shooting pains down his left cheek bone toward the ear; upon rolling or touching that side of his head; also triggered on occasion by [his] police cap; a winter hat; any incidental contact with the area in playing with [his] son; invariably upon use of a motorcycle helmet; by cold or cold and damp weather; occasionally by biting or chewing and invariably upon opening [his] mouth very wide.
Prior to the return date of defendant's motion for summary judgment, plaintiff was initially evaluated on January 2, 1998, by Dr. Mark H. Friedman, a Clinical Associate Professor and Director of the TMJ Clinic, Department of Dentistry at Westchester County Medical Center, Valhalla, New York. In a report dated January 5, 1998, Dr. Friedman noted:
Examination/observation
Claimant presents as a 36 year-old white male, who works as a police officer. The head and neck examination included jaw range of motion observation, application of resistance to the jaw opening and closing, palpation of all accessible jaw, face, and neck muscles, observation of cervical range of motion, and an intra-oral examination.
The following abnormal signs were noted: jaw opening of 44m elicited left TMJ pain at wide opening, jaw protrusion and lateral movement to the right elicited left temporal pain, application of resistance to the jaw closing muscles elicited left temporal soreness, and tenderness of the following areas were noted: lateral aspect of left TMJextremely tender, the anterior left temporalis muscles were tender, and the enlargement over the surgical site was very tender.
Impression
Acute left TMJ inflammation, and muscle spasm of the left anterior temporalis muscle. Based on tenderness to palpation, some pathology related to the surgical area exists. It does not appearbased on extreme tendernessto be just scar tissue.
Causal Relationship
The claimant's pain and dysfunction is causally related to the 11/8/94 trauma.
Treatment Recommendation and Prognosis
Claimant requires TMJ treatment: a removable appliance to reduce TMJ loading forces, antiinflamatory treatmentmedication, ice massage, direct TMJ steroid instillation. A surgical consultation regarding the surgical site is also recommended. It appears, based on a reasonable degree of medical certainty, that this area may not be correctable. In this case, claimant's discomfort would be permanent, *879 and might also prevent a full TMJ recovery.
Immediately upon receipt of this report and prior to the return date of defendant's summary judgment motion, plaintiff's counsel amended answers to interrogatories and filed a copy of Dr. Friedman's report with the motion judge as a further response to defendant's motion and to supplement the certification previously filed on plaintiff's behalf pursuant to R. 4:46-2(b). See Housel v. Theodoridis, 314 N.J.Super. 597, 601, 715 A.2d 1025 (App.Div.1998).
The motion judge had the benefit of all of plaintiff's medical records, including the emergency surgical records and the surgical records of the procedure which removed the bullet fragment. He also received plaintiff's original and supplemental answers to interrogatories, plaintiff's complete deposition testimony, and the medical reports received from both Dr. Sisti and Dr. Friedman.
In granting summary judgment, the motion judge opined:
In the opinion of the Court, the plaintiff failed to satisfy the Court that he suffers from substantial and personal injuries as defined under the cases, most notably under Brooks v. Odom, 150 N.J. 395, 696 A.2d 619 (1997). He must prove that he has sustained a substantial loss of bodily function that is permanent in nature and although the injuries sustained by the plaintiff are arguably objective due to the doctor's report and surgery, they do not, however, cause a substantial loss of a bodily function to the plaintiff, nor are they permanent in nature.
The plaintiff does complain of occasional headaches, however, as the defendant quite properly points out in his reply brief, no doctor has diagnosed the plaintiff with any neurological injury. Furthermore, the plaintiff was able to fully return to work and his daily activities.
As for the T.M.J., the plaintiff in his certified answers to interrogatory [sic], failed to include any such complaints. Nevertheless, the plaintiff has complained about the pain and has seen oral surgeons who stated that the pain is from the accident. Even if the injuries to the jaw and the T.M.J. are permanent as a result of the accident, the plaintiff still failed to prove that the injuries have a substantial impact on his life.
We conclude that the motion judge did not fully consider the statutory criteria which are a prerequisite to a claim under the Act. Additionally, any conclusion reached by the motion judge as to plaintiff's TMJ condition was clearly premature and had the effect of depriving plaintiff of a complete opportunity to present proof of a prima facie case sufficient to withstand defendant's motion. We reverse and remand for further proceedings.

II
Since the matter was presented to the Law Division on defendant's motion for summary judgment, we assume the truth of plaintiff's version of the facts, giving plaintiff the benefit of all favorable inferences that version supports. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 523, 666 A.2d 146 (1995); Dairy Stores, Inc. v. Sentinel Publishing Co., 104 N.J. 125, 135, 516 A.2d 220 (1986).
N.J.S.A. 59:9-2 imposes an obligation on one seeking recovery under the Act to prove either "a permanent loss of a bodily function" or "permanent disfigurement" or "dismemberment" and that "medical treatment expenses are in excess of $1,000." Defendant concedes plaintiff's medical treatment expenses are in excess of $1,000.
Plaintiff's certification in response to defendant's motion stated, in pertinent part:
There is a permanent scar on my head from the injury and vertical incisions of my two operations. The scar is about an inch or two long, located between the left jawbone and ear.
In considering defendant's motion, the judge failed to consider whether plaintiff's scar "between the left jawbone and ear" would constitute "permanent disfigurement" as required by N.J.S.A. 59:9-2(d). The failure to address plaintiff's claim of "permanent disfigurement" violated R. 1:7-4 requiring that "on every motion decided by written orders that are appealable as of right, the court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon."
In Brooks v. Odom, 150 N.J. 395, 696 A.2d 619 (1997), the seminal decision discussing *880 the right of an injured plaintiff to recover for pain and suffering under the Act, the Supreme Court limited its discussion to an interpretation of the threshold requirement that a plaintiff must prove a "permanent loss of bodily function" and concluded, "To recover under the Act for pain and suffering, plaintiff must prove by objective medical evidence that the injury is permanent. Temporary injuries, no matter how painful and debilitating, are not recoverable." Id. at 402-03, 696 A..2d 619. Additionally, it noted, "[A] plaintiff must sustain a permanent loss of the use of a bodily function that is substantial." Id. at 406, 696 A.2d 619. The Court was not required to discuss the legislative intent as to the words "permanent disfigurement" and that phrase was not interpreted in Brooks, as the plaintiff there did not assert any claim for permanent disfigurement.
On appeal, neither party has specifically addressed this component of plaintiff's claim. However, subsequent to oral argument, this court fully addressed this issue. See Hammer v. Township of Livingston, 318 N.J.Super. 298, 307, 723 A.2d 988, 992 (App.Div. 1999) ("disfigurement" must be "permanent" and "substantial"). In Hammer, we also concluded that a motion judge must consider in addressing a motion for summary judgment where a plaintiff claims disfigurement resulting from a scar, the principles enunciated in Falcone v. Branker, 135 N.J.Super. 137, 342 A.2d 875 (Law Div.1975), as expanded in Puso v. Kenyon, 272 N.J.Super. 280, 639 A.2d 1120 (App.Div.1994), to determine if a scar suffered by a tort claimant pierces the threshold of N.J.S.A. 59:9-2(d). Id. at 307-11, 723 A.2d 988

III
We also conclude that the dismissal of plaintiff's claim for "permanent loss of a bodily function," N.J.S.A. 59:9-2(d), was improvidently granted. The numerous cases interpreting summary judgment motion practice, R. 4:46, adhere to the principle that summary judgment should not be granted when discovery is incomplete. See Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193, 536 A.2d 237 (1988), (reaffirming the principle that "[g]enerally, we seek to afford `every litigant who has a bona fide cause of action or defense the opportunity for full exposure of his case'" (citations omitted)); Salomon v. Eli Lilly and Co., 98 N.J. 58, 61, 484 A.2d 320 (1984) (holding that on the facts presented, "[w]ithout deciding whether or when this matter will be ripe for summary judgment, it is clear that the case is not in a suitable posture for summary adjudication at this time"); see also Pressler, Current N.J. Court Rules, comment on R. 4:46-2 (1999).
As we have noted in detail, plaintiff was first examined by Dr. Friedman, a specialist in TMJ, on January 2, 1998. The motion for summary judgment was orally argued on February 6, 1998. The extensive treatment recommended by Dr. Friedman had not commenced as of the date of oral argument. Dr. Friedman opined, in part, "It appears, based on a reasonable degree of medical certainty, that this area, [plaintiff's left anterior temporalis muscle], may not be correctable. In this case, claimant's discomfort would be permanent, and might also prevent a full TMJ recovery." Brooks clarified the standard necessary to meet the threshold under N.J.S.A. 59:9-2(d). The Court held that in order to recover under the Act a claimant must sustain "a permanent loss of the use of a bodily function that is substantial." Brooks, supra, 150 N.J. at 406, 696 A.2d 619 (emphasis added). Brooks also imposed a requirement that a plaintiff prove a claim by "objective medical evidence." Id. at 402-03, 696 A.2d 619. Until such time as plaintiff is given a reasonable opportunity to receive the recommended treatment suggested by Dr. Friedman, the issue of permanency as legislatively defined, N.J.S.A. 59:9-2(d), and as interpreted in Brooks, cannot be determined and the grant of summary judgment was thus prematurely entered by the motion judge.
We also note that it is unquestioned, as noted by Dr. Sisti, that the entry of the bullet fragment into plaintiff's head severed plaintiff's left superficial temporal artery and that "branches of the left superficial temporal artery were tied off to stop the bleeding at this site" during emergency surgery immediately following the injury. It seems abundantly clear that a severed artery in itself might result in a "permanent loss of a bodily function." N.J.S.A. 59:9-2(d). The medical reports submitted by plaintiff fail to *881 specifically address that possible claim, and the motion judge did not sua sponte reference same when he granted summary judgment. Since defendant's motion for summary judgment should have been denied without prejudice pending the completion of plaintiff's treatment under the care of Dr. Friedman, the parties may fully address that issue should defendant refile its motion for summary judgment.
Lastly, should plaintiff withstand defendant's motion for summary judgment on either his claim of "a permanent loss of a bodily function" or "permanent disfigurement," the motion judge must consider whether proof of a prima facie case of either claim will entitle plaintiff to submit evidence relating to both claims to the jury. See Puso, supra, 272 N.J.Super. at 293, 639 A.2d 1120; see also Hammer, supra, at 303, 723 A.2d 988 (refraining to specifically address that issue due to a concession of counsel).
Reversed and remanded for further proceedings consistent with this opinion on plaintiff's disfigurement claim under the Act and without prejudice to defendant's right to refile its motion for summary judgment as to plaintiff's claim of "permanent loss of a bodily function."
NOTES
[1] Plaintiff Patricia Oslacky filed a per quod claim.
[2] N.J.S.A. 59:9-2(d) provides, in pertinent part:

No damages shall be awarded against a public entity ... for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical expenses are in excess of $1,000.00.