894 A.2d 1229 (2006)
384 N.J. Super. 431
Maria SOTO, Plaintiff-Appellant,
v.
Lisa SCARINGELLI and James Scaringelli, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted February 16, 2006.
Decided April 11, 2006.
Albert P. Mollo, attorney for appellant.
Backes & Hill, attorneys for respondents (Scott L. Puro, Trenton, on the brief).
Before Judges CONLEY, WEISSBARD and WINKELSTEIN.
The opinion of the court was delivered by
WEISSBARD, J.A.D.
In this personal injury case arising under the Automobile Insurance Cost Reduction Act of 1998 (AICRA), we are called on to determine the meaning of "significant scarring," one of the means of crossing the verbal threshold, N.J.S.A. 39:6A-8a, *1230 and the circumstances under which that category is subject to resolution by summary judgment.
Plaintiff Maria Soto appeals from a summary judgment in favor of defendants Lisa and James Scaringelli based on a determination by a summary judgment motion judge that a scar on plaintiff's shoulder, resulting from surgery, did not amount to "significant scarring" sufficient to overcome the verbal threshold. We conclude that plaintiff's scar presented a jury question, requiring that we reverse the summary judgment and remand for trial.
On January 6, 2002, plaintiff was walking through the parking lot of the Best Buy store located in Nassau Park Mall in West Windsor Township when she was struck by defendants' car, which was operated by defendant Lisa Scaringelli and registered to defendant James Scaringelli. Plaintiff's daughter, who was present at the time of the accident, drove her to Robert Wood Johnson Hospital where x-rays were taken and a non-prescription drug was provided for pain. Plaintiff was discharged with a diagnosis of left shoulder sprain. A month after the accident, plaintiff had an MRI which revealed "signal changes in the superior aspect of the supraspinatus tendon." The doctor reviewing the MRI noted that "a slight partial tear in this area could be considered in the differential diagnoses" and recommended "clinical correlation." As a result, plaintiff was referred to an orthopedic specialist, Dr. Aita, who concluded that plaintiff may have sustained "a strain of the rotator cuff." He did not feel any further studies were warranted at that time but did recommend that plaintiff participate in a supervised therapy program and return for a review in approximately one month. After further reviews and continued therapy, Dr. Aita administered a corticosteroid injection, which led him to discharge plaintiff from active treatment on July 24, 2002. On October 23, 2002, plaintiff returned to Dr. Aita with renewed complaints of left shoulder pain. His examination was "compatible with impingement syndrome of the shoulder," resulting in a recommendation for either a repeat injection or an arthroscopic subacromial decompression. Eventually, surgery was performed on March 11, 2003. The diagnosis was:
1. Synovitis/labral fraying, left shoulder.
2. Rotator cuff tear, left shoulder.
3. Impingement syndrome, left shoulder.
4. Osteoarthritis, left acromioclavicular joint.
The procedures performed were:
1. Diagnostic left shoulder arthroscopy with synovectomy/debridement.
2. Open rotator cuff repair with subacromial decompression.
3. Distal clavicle resection.
4. Insertion pain buster catheter.
After the surgery, plaintiff received physical therapy twice a week, a total of forty-two times, until August 12, 2003. At the conclusion of treatment, the therapist reported that plaintiff had zero out of ten on a pain scale, with all movements being normal. On August 24, 2004, plaintiff saw Dr. Shapiro, a plastic surgeon, for an evaluation. He noted a seven centimeter well-healed scar of the shoulder, with a palpable metal plate underneath the skin of the shoulder. Based on that examination, Dr. Shapiro signed a certificate on March 31, 2005 attesting that the accident of January 6, 2002 had resulted in "significant scarring."
At the summary judgment motion argument, plaintiff's counsel conceded that plaintiff did not have any "permanent shoulder restrictions," relying solely upon the scarring to overcome the verbal *1231 threshold. Since plaintiff did not provide the judge with any photographs of the scar, the judge was asked to view the scar in person. The judge described his observations and stated his findings as follows:
As I viewed the shoulder of the plaintiff today, the left shoulder area, there is a scar, it may be as much as four inches in length, it is not readily discernible. I was within three feet of her ... I did make out a line, it was very thin, apparently a very good surgeon. I've seen lots of scars in my time, and this is a terrific, terrific job. It was not readily apparent to me, it took some looking before I was able to see the scar there. There are some other blemishes on the shoulder, as well, life blemishes, if you will, I don't know what caused those. They were more apparent, frankly, to me, than the scar, but not of any significance, I mean, but unless somebody was looking with great particularity at that shoulder, under a good strong light, that scar is not visible, it doesn't have any keloid features to it at all, it is very thin, it's a little lighter than the surrounding skin, something.
In a way, unfortunately, because of theit's a significant injury that occurred here, I see so many of these cases, the injury the plaintiff sustains is real, the consequences are real. It just happens that the application of the law that I'm constrained to apply tells me, as the legislature designed it to be, that this is not one of the cases that passes the trial bench.
Although the judge was able to palpate the screw and attached metal plate resulting from the surgery, he observed that there was no bump or any other visually noticeable evidence of the hardware. He considered the hardware "serious stuff," but rejected plaintiff's argument that it constituted "disfigurement" for purpose of the threshold since there was no "deformity," "bulge[s]" or the like resulting from the screw and plate. Defendants' motion for summary judgment was granted.
AICRA modified the categories of injury qualifying for recompense under the verbal threshold. Insofar as pertinent here, the prior version of N.J.S.A. 39:6A-8a included "significant disfigurement" as one of nine categories. AICRA reduced the number of categories to six, including "significant disfigurement or significant scarring." N.J.S.A. 39:6A-8a. In Puso v. Kenyon, 272 N.J.Super. 280, 639 A.2d 1120 (App.Div.1994), we examined the category of "significant disfigurement" under the pre-AICRA version of the threshold in the context of scarring. In that case, the plaintiff had a scar behind her right knee five centimeters in length and from three millimeters to two centimeters in width. Id. at 285, 639 A.2d 1120. We held that whether a scar constituted a "significant disfigurement" was an objective inquiry[1] utilizing various factors such as appearance, coloration, shape and size. Id. at 291, 639 A.2d 1120. These factors were drawn from the opinion in Falcone v. Branker, 135 N.J.Super. 137, 147-52, 342 A.2d 875 (Law Div.1975). Ibid. To the extent that Puso focused on "whether the scar is objectively disfiguring," Puso, supra, 272 N.J.Super. at 292, 639 A.2d 1120, it provides only limited guidance in our present inquiry, an observation that applies, *1232 as well, to the Law Division opinion in Falcone, which interpreted "significant disfigurement" by reference to workers compensation cases that required that a disfigurement be both permanent and serious. Falcone, supra, 135 N.J.Super. at 144-47, 342 A.2d 875. There, the court concluded "that a disfigurement becomes serious when it substantially detracts from the appearance of the person disfigured." Id. at 147, 342 A.2d 875 (citing Dombrowski v. Fafnir Bearing Co., 148 Conn. 87, 167 A.2d 458 (1961)).
While it might seem that by adding "significant scarring" as a separate category, the Legislature intended to distinguish it in some way from "significant disfigurement," there is no legislative history to support such an interpretation. It seems more likely that the addition of scarring resulted from the fact that AICRA was based upon the Florida no-fault law, which includes as one of its four categories, "significant and permanent scarring or disfigurement." DiProspero v. Penn, 183 N.J. 477, 501, 874 A.2d 1039 (2005); see also Craig & Pomeroy, New Jersey Auto Insurance Law § 15:402 at 276 (Gann 2006) (stating that the addition of significant scarring did not signal a substantial change given Puso's interpretation that disfigurement included scarring).
In concluding that the judge here erred in granting summary judgment, we find Gilhooley v. County of Union, 164 N.J. 533, 753 A.2d 1137 (2000) most instructive. In that case, arising under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, the Court was required to determine whether plaintiff's injury constituted the "`permanent loss of a bodily function' ... so as to justify an award of pain and suffering damages under N.J.S.A. 59:9-2(d)." Id. at 535, 753 A.2d 1137. There, the plaintiff had fractured her patella, requiring "restructuring through a surgical procedure known as an open reduction internal fixation," which involved the insertion of "fixation devices," including "two K-wires, or `pins' and a single `AO tension band wire.'" Id. at 536, 753 A.2d 1137. The procedure left the plaintiff with a scar of approximately four to five inches in length "over the forward portion of her knee from the bottom of her thigh down to just below the kneecap." Id. at 537, 753 A.2d 1137. In granting summary judgment, the trial court did not assess whether the injury constituted a permanent loss of a bodily function, but instead applied the Falcone standard in concluding that the scar did not constitute a "permanent disfigurement," one of the other qualifying categories under N.J.S.A. 59:9-2d. Id. at 537-38, 753 A.2d 1137.
First, the Court concluded that the plaintiff had suffered a "permanent injury resulting in substantial loss of bodily function." Id. at 541, 753 A.2d 1137. The fact that the surgery restored plaintiff to efficient use of her knee by employing "pins and wires to re-establish its integrity," id. at 542, 753 A.2d 1137, did not remove the injury from the category of those demanding recompense. Id. at 542-43, 753 A.2d 1137. The Court rejected defendant's claim "that, after her surgery, [plaintiff] was as good as new. Not so. She now requires pins and wires inside her body in order for her knee to function." Id. at 542, 753 A.2d 1137.
The Court then turned to the permanent disfigurement aspect of the summary judgment ruling. The Court noted that in Hammer v. Twp. of Livingston, 318 N.J.Super. 298, 308, 723 A.2d 988 (App. Div.1999), we had applied Falcone's objective standard to the interpretation of permanent disfigurement under the TCA. Id. at 543-44, 753 A.2d 1137. The Court continued:

*1233 Based on that standard, the Hammer court declared that in order to be considered a permanent disfigurement, a scar must impair or injure the beauty, symmetry, or appearance of a person, rendering the bearer unsightly, misshapen or imperfect, deforming her in some manner. [Hammer, supra, 318 N.J.Super. at 308, 723 A.2d 988] (quoting Falcone, supra, 135 N.J.Super. at 145, 342 A.2d 875). Citing Puso v. Kenyon, 272 N.J.Super. 280, 639 A.2d 1120 (App.Div. 1994), Hammer also acknowledged that a number of factors should be considered, including appearance, coloration, existence and size of the scar, as well as, shape, characteristics of the surrounding skin, remnants of the healing process, and any other cosmetically important matters. Id. at 308-09, 723 A.2d 988. Additionally, the court concluded that Brooks [v. Odom, 150 N.J. 395, 696 A.2d 619 (1997)] requires that the disfigurement must not only be "permanent" but "substantial" as well. Id. at 308, 723 A.2d 988.
[Id. at 544, 753 A.2d 1137.]
The Court went on to note that we had reversed the summary judgment in Hammer, concluding that the motion judge had erroneously undertaken to "`weigh the evidence and determine the truth of the matter [rather than merely determining] whether there is such a dispute.'" Ibid. (quoting Hammer, supra, 318 N.J.Super. at 310, 723 A.2d 988). Turning to the case before it, the Court concluded that the motion judge had likewise "resolved a dispute on the merits that should have been decided by a jury." Id. at 545, 723 A.2d 988. Significantly, "the [trial] court never determined that no rational fact-finder could render a judgment in favor of Mrs. Gilhooley." Ibid. We see no reason why the Court's analysis is not applicable in the present case, given that the identical term, "disfigurement," is used in both statutes. The term could not reasonably mean one thing under the TCA and another under AICRA.
Here, we are left with some doubt as to whether the motion judge applied the correct summary judgment standard, although he certainly alluded to it, unlike the judges in Gilhooley and Hammer, when he stated:
I have to make a determination as to whether or not any reasonable finding of fact, in a group of six people in this courtroom, would be an (indiscernible) find, that this is a scar of some significance that it qualifies under the decision they brought here. I don't find that to be the case.
Through no fault of the able motion judge, the transcript does not fully and unambiguously convey his thinking. Although he clearly referred to the finding a jury would have to make, rather than his own, we cannot be certain that he focused on the "no rational fact-finder" standard. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535, 540, 545, 666 A.2d 146 (1995). Rather than remand for clarification, we opt to exercise our original jurisdiction, R. 2:10-5, and decide the matter as the Court did in Gilhooley. As was the case there, we have not been provided with photographs of plaintiff's shoulder, leaving us with only the judge's description as a guide. Nevertheless, based on that description, including not only the four inch scar but the hardware that could be palpated, we conclude, as in Gilhooley, that the scarring/disfigurement is not "so insubstantial that no rational fact-finder could determine that it [does not] impair[ ] [plaintiff's] appearance, rendering her `unsightly,' `misshapen,' or `imperfect.'" Id. at 546, 753 A.2d 1137 (quoting Falcone, supra, 135 N.J.Super. at 145, 342 A.2d 875). We do not hold that summary judgment *1234 is never appropriate in scarring/disfigurement cases. Clearly there can be scars that are so minimal and so concealed from view that no reasonable person could find them significant. We do not find that to be the case here. On the other hand, a jury may yet find that plaintiff's scarring is not significant. We express no view on that prospect.
Reversed and remanded for trial.
NOTES
[1] We note that in her deposition, plaintiff described her personal, subjective feelings about the scarring as follows:

I don't feelI don't know how to put it in words. Self conscious. I know it's there. I don't dress like I used to dress because of the scar. Everything that I wear has sleeves. I don't like the scar at all on my body. And also self conscious. People that I date, they look at it, they ask what happened. I just say itit makes me feel very uncomfortable.