**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3641-20

AYOTOLANI OGUNTUASE,

Plaintiff-Appellant,

and

EBENEEZER O. OGUNTUASE, as guardian ad litem for AYOLOLA OGUNTUASE, a minor,

Plaintiff,

v.

THE ESTATE OF ANTOINETTE J. DANGERFIELD, DARCY L. DANGERFIELD, and MARY L. OGUNTUASE,

Defendants-Respondents.

---

Argued October 4, 2022 – Decided October 20, 2022

Before Judges Rose and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1355-19.

Henry J. Kowalski, III, argued the cause for appellant (Rone & Kowalski, attorneys; Henry J. Kowalski, III, on the brief).

Toni M. Gheen argued the cause for respondents (Law Office of Alphonso H. Ibrahim, attorneys; Toni M. Gheen, on the brief).

PER CURIAM

In this automobile-accident case, plaintiff Ayotolani Oguntuase appeals an order granting defendants' summary-judgment motion, arguing the motion judge erred in finding plaintiff failed to meet the lawsuit-threshold standard of N.J.S.A. 39:6A-8(a). We agree with the judge and affirm.

I.

We discern the facts from the summary-judgment record, viewing them in the light most favorable to plaintiff. See Richter v. Oakland Bd. of Educ., 246 N.J. 507, 515 (2021). Plaintiff Ayotolani Oguntuase and defendant Antoinette J. Dangerfield were involved in a motor-vehicle accident that occurred on May 28, 2017.[1] Plaintiff was a passenger in one vehicle; Antoinette was the driver

[1] Antoinette Dangerfield passed away after the judge granted summary judgment and before plaintiff filed this appeal. With leave of court, plaintiffs amended the complaint to name the Estate of Antoinette J. Dangerfield as a defendant. The complaint included claims filed on behalf of Ayolola Oguntuase. The parties subsequently stipulated to the dismissal of those claims. Given the

of the other vehicle, which was owned by defendant Darcy L. Dangerfield. Plaintiff filed a complaint, alleging Antoinette had disregarded a red traffic light, entered an intersection, and struck the vehicle in which plaintiff was a passenger. Plaintiff claimed she was injured because of Antoinette's negligence. According to her treating physician, as a result of the accident, plaintiff sustained a contusion of the right elbow with a one-centimeter scar and a contusion of the left knee with a 2.25-centimeter scar.

In plaintiff's parents' automobile insurance policy, the limitation-on-lawsuit option was selected. As a result of that selection and pursuant to N.J.S.A. 39:6A-8(a), plaintiff was required to prove she had sustained "a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement" to recover non-economic damages. N.J.S.A. 39:6A-8(a); see also DiProspero v. Penn, 183 N.J. 477, 488 (2005) (finding the limitation-on-

dismissal of those claims, we refer to only Ayotolani as plaintiff. When we use the parties' first names, we do so for ease of reading given the parties' common last names. We mean no disrespect.

lawsuit threshold bars a recovery for pain and suffering unless the plaintiff suffers an injury resulting in one of the six categories enumerated in the statute).

After the close of discovery, the Dangerfield defendants moved for summary judgment, contending plaintiff's injuries did not meet the lawsuit-threshold standard of N.J.S.A. 39:6A-8(a). In opposition to the motion, plaintiff submitted, among other things, copies of thirteen photographs of her scars and portions of the transcript of her deposition. At the time of her deposition, plaintiff was a twenty-year-old college student studying nursing and a logistics specialist in the Navy Reserve. Plaintiff testified she no longer wears shorts or goes to the beach because she is self-conscious about her scars and that her elbow hurts when she engages in certain exercises. Plaintiff argued an objectively-reasonable person would regard the scars as substantially detracting from her appearance such that she met the standard of N.J.S.A. 39:6A-8(a).

After hearing argument, Judge Stanley L. Bergman, Jr. asked plaintiff's counsel to submit authenticated and higher-quality photographs of plaintiff's scars. Plaintiff's counsel indicated he had submitted a hard copy of plaintiff's opposition papers, which included color photographs. The judge subsequently located that submission and viewed those photographs, describing them as being "of much better quality." In rendering his decision, the judge relied on those

photographs. The judge conducted a supplemental hearing via Zoom, giving plaintiff the opportunity to show him her scars, "in an effort to utilize every medium available in order to accurately view the injuries."[2]

During the supplemental hearing, the judge described plaintiff's elbow scar as "one centimeter circular, ha[ving] a slightly different coloration on that. I don't see a lot of raising on it . . . ." Plaintiff's counsel added the scar was "a little bit raised . . . like a water droplet in its shape and it is discolored from the surrounding skin." The judge described a scar on the knee as not "circular" but "more of a flattened oval shape" with "just a slight amount of discoloration in the area." The scar did not appear on Zoom as raised as it did in the photographs. The judge stated he could not "tell as much here that it was raised slightly, I thought, maybe a little bit more than a droplet as described by" plaintiff's counsel. The judge agreed with plaintiff's treating physician that the scar was 2.25 centimeters in size. Plaintiff's counsel identified a second knee scar. The judge described that scar as darker, "a slightly different color." The judge estimated that scar was approximately half the size of the other knee scar, so "maybe one and a half to one and a quarter centimeters." The judge did not "see

[2] Counsel provided us with the color photographs and a copy of the transcripts of the hearings but not a video copy of the supplemental hearing.

a lot of raising" in that scar but agreed with plaintiff's counsel that the scar was "slightly raised."

The day after the supplemental hearing, the judge issued an order and written decision granting defendants' motion. In his written opinion, the judge gave this description of the scars:

> [T]he elbow has [a] small blemish approximately one centimeter in circumference as certified to by her doctor. The scar is mildly, if at all, raised. The [rise] if any is about the size of a drop of water as stated by plaintiff's attorney at oral argument. The scar is on the back of her right arm on her elbow which is minimally noticeable unless plaintiff bends and raises her arm. The court finds that even when viewing the scar directly that such is hardly apparent. The elbow scarring would not be noticeable unless one was specifically looking for it. The color shade of the scar and surrounding area is very slightly different in color, if at all different.
>
> . . . .
>
> Turning to the scarring on plaintiff['s] upper right portion of the left knee the court comes to the same conclusion as it did as to the elbow. From a review of the photographs and direct video observation, the scar on the inner part of her left knee is also small. Although larger than her elbow scar, the scar was measured by plaintiff's doctor and found to be 2 1/4 centimeters in length in the shape of a slightly flattened oval which the photos and video observation corroborate. The photos and video observation depict a slightly raised scar that the court finds would only be noticeable if one was specifically searching for such. As with the elbow scar,

> the color shade of the knee scar and surrounding area is very slightly different in color, if at all different.
>
> . . . .
>
> The court also considered an additional scar on the left knee which was located diagonally downward left to the previous scar. Although no measurement of that scar was provided in the plaintiff's doctor's submission, the court and all parties agreed on the record that the scar was oblong in shape and approximately 1 - 1 1/2 centimeters in length. The properties of this scar are the same as the other two scars described herein.

Applying an objectively-reasonable-person standard and considering plaintiff's scars "individually or collectively," the judge found the scars did not make plaintiff "unattractive, objectionable, or a subject of pity or scorn" and did not "substantially detract from plaintiff's appearance or impair or injure the beauty, symmetry, or appearance of the plaintiff so as to render the bearer unsightly, misshapen or imperfect deforming her in some manner." The judge concluded the "scarring is not significant as a matter of law, when looking at the appearance coloration, existence and size of the scars from an objective, empirical standpoint" and, accordingly, granted defendants' motion. This appeal followed.

II.

We review a grant of summary judgment "de novo and apply the same standard as the trial court." Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021). Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

In 1998, our Legislature enacted the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35, with the goal of "preserv[ing] the no-fault system while at the same time reducing unnecessary costs which drive premiums higher." Haines v. Taft, 237 N.J. 271, 287 (2019) (quoting N.J.S.A. 39:6A-1.1(b) (1998)). In AICRA, the Legislature "adhered to

the recognized 'philosophical basis of the no-fault system . . . a trade-off of . . . providing medical benefits in return for a limitation on the right to sue for non-serious injuries.'" Ibid. (quoting N.J.S.A. 39:6A-1.1(b) (1998)). N.J.S.A. 39:6A-8(a), "the 'limitation on lawsuit' or 'verbal threshold' of AICRA, . . . is a cost-containment measure that provides lower premium payments in exchange for a limitation on the insured's right to sue for noneconomic damages." Agha v. Feiner, 198 N.J. 50, 60 (2009) (quoting DiProspero, 183 N.J. at 480-81 (2005)). In cases, like this one, in which the limitation-on-lawsuit provision applies, a plaintiff must prove he or she sustained one of the types of injuries listed in N.J.S.A. 39:6A-8. DiProspero, 183 N.J. at 488.

Plaintiff contends her scars constitute "significant disfigurement or significant scarring" under N.J.S.A. 39:6A-8. To meet that standard, plaintiff must demonstrate "an objectively reasonable person would regard" her scars "as substantially detracting from [her] appearance, or so impairing or injuring" her "beauty, symmetry, or appearance . . . as to render . . . her unsightly, misshapen, or imperfect." Soto v. Scaringelli, 189 N.J. 558, 564 (2007). "[I]n making that objective determination, a number of factors are relevant, 'including appearance, coloration, existence and size of the scar, as well as, shape, characteristics of the surrounding skin, remnants of the healing process, and any other cosmetically

important matters.'" Id. at 574 (quoting Gilhooley v. Cnty. of Union, 164 N.J. 533, 544 (2000)); see also Puso v. Kenyon, 272 N.J. Super. 280, 291 (App. Div. 1994) (describing the characteristics of a scar that serve as "objective factors which may be utilized by the court in considering whether the scar is significant in a summary judgment motion in a verbal threshold case"). "[T]he record on appeal [must] contain both the motion court's description of its observations as well as preserved visual evidence of the scar." Soto, 189 N.J. at 576. The "court's observations . . . serve as the predicate for a determination whether the scar is objectively significantly disfiguring so as to defeat defendant's motion for summary judgment." Id. at 573 (quoting Puso, 272 N.J. Super. at 292).

This record contains both "visual evidence" of plaintiff's scars – the photographs provided to the trial court and this court – and "the motion court's description of its observations." Id. at 576. Judge Bergman placed on the record during the supplemental hearing, with input from counsel, and set forth in his written opinion extensive and detailed descriptions of the scars as he observed them. Considering his observations and the photographs in the record, we agree with Judge Bergman that the scars objectively do not make plaintiff "unattractive, objectionable, or a subject of pity or scorn" and do not "substantially detract from plaintiff's appearance or impair or injure the beauty,

symmetry, or appearance of the plaintiff so as to render [her] unsightly, misshapen or imperfect deforming her in some manner." Thus, plaintiff's scars are not significant as a matter of law and do not enable plaintiff to vault AICRA's limitation-on-lawsuit threshold.

Plaintiff contends the judge viewed the scars only individually and did not consider the collective appearance of the two scars on plaintiff's knee. Contrary to that contention, Judge Bergman expressly based his opinion on his observations of the scars "individually or collectively." Viewing the same photographs that were before Judge Bergman, we reach the same conclusion, whether viewing the scars individually or collectively.

Our decision is not intended to minimize plaintiff's feelings about the scars. We recognize that "every scar may be perceived subjectively by the scar victim as being 'unattractive, objectionable, or the subject of pity or scorn.'" Puso, 272 N.J. Super. at 291 (quoting Agudelo v. Pan Am. World Airways, Inc., 460 N.Y.S.2d 416, 419 (1983)). Although plaintiff subjectively may view her scars as unattractive, courts must consider "on an objective basis" whether scars are sufficiently significant to satisfy the limitation-on-lawsuit threshold of AICRA. Soto, 189 N.J. at 574. Because plaintiff failed to meet that objective standard, summary judgment was appropriate.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION