917 A.2d 734

MARIA SOTO, PLAINTIFF–RESPONDENT, v. LISA SCARINGELLI AND JAMES SCARINGELLI, DEFENDANTS–APPELLANTS.

Argued January 3, 2007—Decided March 21, 2007.

 

Scott L. Puro, argued the cause for appellants (*Backes & Hill,* attorneys; *Mr. Puro* and *Robert C. Billmeier,* on the brief).

*Albert P. Mollo,* argued the cause for respondent.

Justice RIVERA–SOTO delivered the opinion of the Court.

New Jersey's compulsory automobile insurance statutory scheme distinguishes between those who seek recovery for economic loss—"uncompensated loss of income or property, or other uncompensated expenses, including, but not limited to, medical expenses[,]" *N.J.S.A.* 39:6A–2k—and those who seek recovery for nonecomonic loss—that is, loss for "pain, suffering and inconvenience[,]" *N.J.S.A.* 39:6A–2i. The noneconomic loss category of cases is further defined. If the verbal threshold [1] or limitation on

---

[1] "The phrase 'verbal threshold' came into vogue because the plaintiff [must] prove that an injury or condition satisfied the statutory *words.*" *DiProspero v.*

lawsuit option applies, an injured person may not maintain a lawsuit for nonecomonic damages "unless that person has sustained a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." *N.J.S.A.* 39:6A–8a. If, however, the verbal threshold or limitation on lawsuit option does not apply, "every owner, registrant, operator, or occupant of an automobile . . . and every person or organization legally responsible for his acts or omissions, shall be liable for noneconomic loss to a person . . . as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State." *N.J.S.A.* 39:6A–8b.

In this appeal, we are called on to define, in the context of a plaintiff's appearance, what level of disfigurement or scarring is "significant," that is, what degree of disfigurement or scarring is required to overcome the bar to recovery for noneconomic loss set forth in the limitation on lawsuit option provisions of the Automobile Insurance Cost Reduction Act of 1998 (AICRA), *N.J.S.A.* 39:6A–8a. On summary judgment, the trial court ruled that the claimed injuries were insufficient to constitute "significant disfigurement or significant scarring." The Appellate Division, exercising its original jurisdiction and relying on *Gilhooley v. County of Union,* 164 *N.J.* 533, 546, 753 *A.*2d 1137 (2000), reversed, concluding that "the scarring/disfigurement is not so insubstantial that no rational fact-finder could determine that it does not impair plaintiff's appearance, rendering her unsightly, misshapen, or imperfect." *Soto v. Scaringelli,* 384 *N.J.Super.* 431, 438, 894 *A.*2d 1229 (App.Div.2006) (citation, quotation marks and editing marks omitted).

We disagree. We earlier explained that "an automobile accident victim who is subject to the threshold and sues for

noneconomic damages has to satisfy only one of AICRA's six threshold categories[.]" *DiProspero v. Penn, supra,* 183 *N.J.* at 481–82, 874 *A.*2d 1039. In respect of the "significant disfigurement or significant scarring" statutory threshold applicable to a plaintiff's appearance, we hold that the threshold is satisfied only if an objectively reasonable person would regard the scar or disfigurement as substantially detracting from the automobile accident victim's appearance, or so impairing or injuring the beauty, symmetry, or appearance of a person as to render him or her unsightly, misshapen, or imperfect. Applying that standard, we also hold that the trial court properly concluded that injuries claimed did not satisfy the "significant disfigurement or significant scarring" statutory threshold. Finally, we hold that, in the future and as a condition precedent to meaningful appellate review, a plaintiff who seeks to resist a defense based on that threshold bears the burden of establishing a proper record. That record must include the trial court's direct observations and description of the disfigurement or scarring alleged to be significant, together with an accurate photographic record thereof.

## I.

Because this appeal arises on defendants' motion for summary judgment, we view the facts in the light most favorable to plaintiff. *DiProspero v. Penn,* 183 *N.J.* 477, 482, 874 *A.*2d 1039 (2005) (citing *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995)). The relevant facts are readily summarized.

On January 6, 2002, plaintiff Maria Soto was walking through a shopping center parking lot when she was struck by an automobile owned by defendant James Scaringelli and driven by his wife, defendant Lisa Scaringelli. Plaintiff complained of injuries to her left shoulder, which were treated without surgical intervention. Fourteen months later, when plaintiff's left shoulder still had not healed, surgery was required. First, plaintiff was subjected to a

diagnostic arthroscopy.[2] Based on the results of the arthroscopy, the surgeon operated on plaintiff's left shoulder, performing an open rotator cuff repair, with a decompression of the area beneath the outer extremity of the shoulder blade and a resection of the clavicle. In addition, a catheter was inserted for the delivery of pain medications.

As a result of those surgical procedures, plaintiff had three scars. Two of them, resulting from the arthroscopy, are admittedly minor and, therefore, are not at issue. Plaintiff claims, however, that the scar from the incision required for the open rotator cuff repair constituted "significant scarring" sufficient to vault the statutory threshold. In addition, plaintiff claims that the metal plate and screw implanted in her shoulder as part of the surgical repair constituted "significant disfigurement," and independently were sufficient to vault the statutory threshold. In support, plaintiff submitted a treating physician's certificate[3] prepared by Aaron L. Shapiro, M.D., explaining that plaintiff's "physical exam at this time reveals a 7 cm [or a 2¾ inch] scar of the left shoulder" and "a palpable metal object underneath the scar." Based on his examination, Dr. Shapiro was of the "opinion, within a reasonable degree of medical certainty, that [plaintiff] has suffered permanent scarring as a result of the accident[.]" Dr. Shapiro also opined that, "[i]n addition to the physical scar, [plaintiff] has a palpable plate underneath the skin of the shoulder."

On November 7, 2003, plaintiff sued defendants. Plaintiff alleged that the accident required that she "obtain[ ] medical treat-

---

[2] Arthroscopy is the "[e]ndoscopic examination of a joint[.]" *Webster's II College Dictionary* 62 (1995). Diagnostic arthroscopy "is particularly valuable in determining the appropriate surgical procedure for stabilization of the [shoulder]." A.H. Woodward, M.D. & Laura Brasseur, *Attorneys' Textbook of Medicine* 5.26 (3d ed. 2006).

[3] AICRA also requires that, "within sixty days following the filing of an answer to the complaint, the plaintiff must provide the defendant with a certification from an appropriately licensed physician stating that she suffered an injury defined in one of the six statutory categories." *DiProspero v. Penn, supra,* 183 *N.J.* at 488–89, 874 *A.2d* 1039 (citing *N.J.S.A.* 39:6A–8a).

ment, caused her great pain and suffering, incapacitated her from pursuing her usual employment and other activities, and left her with permanent disabilities that may or will in the future incapacitate her, cause her great pain and suffering and require medical treatment." Defendants filed an answer and interposed several separate defenses. Among these, defendants asserted that "[n]o injuries alleged[ ] ... by plaintiff[ ] resulted in ... permanent significant disfigurement, ... thus these defendants are exempt from liability for damages to the plaintiff[ ] under the terms or by virtue of *N.J.S.A.* 39:6A–8."

After discovery was completed, defendants moved for summary judgment. In part, defendants alleged that the observable results from plaintiff's surgery were insufficient to vault the "significant disfigurement or significant scarring" threshold. Before the motion court, plaintiff explained that the primary issue before the court was plaintiff's scar and the standard by which it was to be gauged. According to plaintiff, and as agreed to by defendants, "[t]he standard is [ ] whether [the Court] find[s] that a reasonable fact finder could find that this is a significant scarring, that materially affects her appearance, in some way." Plaintiff explained further:

In this case, just so the Court is clear on the standard that we're submitting is applicable, it's not whether opposing counsel views the scar and thinks it's significant, it's not whether I think it's significant, or with respect, even the Court's own opinions as to whether it's significant, *it's whether any rational fact finder, based on the evidence before it, could think that it's significant.*

[(emphasis supplied).]

In respect of plaintiff's claim of "significant disfigurement," plaintiff explained that "there is another issue, here[ ] with disfigurement, ... that she has a metal plate and a screw, which is palpable through the skin, all of which are noted for the Court, in Dr. Shapiro's report, the plastic surgeon." Responding to the motion court's remark that "visually, it's not noticeable[,]" plaintiff asserted that "her anatomy has been disfigured, ... she has a plate and a screw, which [were] not there before, which [are] now palpable through her flesh[.]"

Addressing the standard to be applied, the motion court noted that it had "to make a determination as to whether or not any reasonable find[er] of fact, in a group of six people in this courtroom, would ... find, that this is a scar of some significance, that it qualifies[.]" Applying that standard to plaintiff's scarring claim, the motion court concluded as follows:

> As I viewed the shoulder of the plaintiff today, the left shoulder area, there is a scar, it may be as much as four inches in length,[4] it is not readily discernible. I was within three feet of her ... I did make out a line, it was very thin, apparently a very good surgeon. I've seen lots of scars in my time, and this is a terrific, terrific job. It was not readily apparent to me, it took some looking before I was able to see the scar there. There are some other blemishes on the shoulder, as well, life blemishes, if you will, I don't know what caused those. They were more apparent, frankly, to me, than the scar, but not of any significance, I mean, but unless somebody were looking with great particularity at that shoulder, under a good strong light, that scar is not visible, it doesn't have any keloid features to it at all, it is very thin, it's a little lighter than the surrounding skin[.]

In respect of plaintiff's disfigurement claim, the motion court did not find "that the hardware in her shoulder is of any consequence in this evaluation[,]" concluding that "I do not see any deformity, any bulges, and so forth, in her shoulder." Based on those conclusions, the motion court granted defendants' motion for summary judgment.

Plaintiff appealed, and the Appellate Division reversed and remanded the case for trial. *Soto v. Scaringelli, supra,* 384 *N.J.Super.* at 439, 894 *A.*2d 1229. According to the panel, it was uncertain whether the motion court applied the proper summary judgment standard, that is, "the 'no rational fact-finder' standard." *Id.* at 438, 894 *A.*2d 1229 (citing *Brill, supra,* 142 *N.J.* at 535, 666 *A.*2d 146); *see also Brill, supra,* 142 *N.J.* at 523, 666 *A.*2d 146 (defining summary judgment standard as "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfin-

---

[4] As noted in the written report by plaintiff's plastic surgeon, the scar was measured as seven centimeters—or two-and-three-quarters inches—in length.

der to resolve the alleged disputed issue in favor of the non-moving party").

The panel, exercising its original jurisdiction pursuant to *R.* 2:10–5, further determined that "the scarring/disfigurement is not so insubstantial that no rational fact-finder could determine that it does not impair plaintiff's appearance, rendering her unsightly, misshapen, or imperfect." *Soto v. Scaringelli, supra,* 384 *N.J.Super.* at 438, 894 *A.2d* 1229 (citation, quotation marks and editing marks omitted). The Appellate Division cautioned, however, that it did "not hold that summary judgment is never appropriate in scarring/disfigurement cases. Clearly there can be scars that are so minimal and so concealed from view that no reasonable person could find them significant." *Ibid.* The panel explained that, while it did "not find that to be the case here[,] a jury may yet find that plaintiff's scarring is not significant." *Id.* at 438–39, 894 *A.2d* 1229. For that reason, the Appellate Division "express[ed] no view on that prospect." *Ibid.*

Defendants sought certification, and we granted their petition. 188 *N.J.* 218, 902 *A.2d* 1235 (2006). For the reasons that follow, we reverse the judgment of the Appellate Division, and we reinstate the judgment of the motion court.

## II.

Defendants raise three questions on certification in respect of AICRA's limitation on lawsuit threshold. First, defendants assert that plaintiff's scar as described by the motion court cannot constitute "significant scarring." Defendants also argue that plaintiff's "subdermal metal hardware, unobservable by the naked eye[, does not] constitute[ ] a 'significant' disfigurement." Finally, defendants claim that the Appellate Division should have "defer[red] to the personal observations of the trial court regarding both the scar and metal hardware where the Appellate Division did not have any photographs or other evidence contradicting those observations."

Plaintiff responds that the Appellate Division properly reversed the judgment of the motion court because her scar and her surgically implanted metal hardware satisfy the limitation on lawsuit threshold of AICRA, and because the motion court applied an incorrect standard on summary judgment.

### III.

We recently summarized the history of New Jersey's legislative efforts to stem the tide of ever-rising automobile insurance premiums. *DiProspero v. Penn,* 183 *N.J.* 477, 485–91, 874 *A.*2d 1039 (2005). We need not repeat that history here. For present purposes, it is sufficient to note that, in verbal threshold cases under New Jersey's no-fault automobile insurance cases, "the insured victim could sue for noneconomic damages only if her injuries fit into one of [the] statutory categories." *Id.* at 486, 874 *A.*2d 1039 (citing *Oswin v. Shaw,* 129 *N.J.* 290, 297, 609 *A.*2d 415 (1992)). Also, we explained that AICRA "recast" these statutory categories so that "[s]ignificant scarring was added to the significant disfigurement category." *Id.* at 488, 874 *A.*2d 1039. Particularly, we noted that AICRA's limitation on lawsuit threshold was patterned after a "comparable Florida law[.]" *Id.* at 501–02, 874 *A.*2d 1039.

In this case of first impression, our task is to ascertain the Legislature's intent when it defined "significant disfigurement or significant scarring" as a category that vaults AICRA's verbal threshold and permits recovery. The principles that guide that task are well-settled:

> [W]e must look to the Legislature's intent in fashioning AICRA's limitation on lawsuit threshold. The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language. We ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole. It is not the function of this Court to rewrite a plainly-written enactment of the Legislature or presume that the Legislature intended something other than that expressed by way of the plain language. We cannot write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment, or engage in conjecture or surmise which will circum-

vent the plain meaning of the act. Our duty is to construe and apply the statute as enacted.

[*Id.* at 492, 874 *A.*2d 1039 (citations, internal quotation marks and editing marks omitted).]

Our inquiry is not without limits, as

[a] court should not resort to extrinsic interpretative aids when the statutory language is clear and unambiguous, and susceptible to only one interpretation. On the other hand, if there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction. We may also resort to extrinsic evidence if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language. [*Id.* at 492–93, 874 *A.*2d 1039 (citations, internal quotation marks and editing marks omitted).]

The point of departure of our analysis is clear: it "begins with the plain language of the statute." *Id.* at 493, 874 *A.*2d 1039 (citing *Miah v. Ahmed,* 179 *N.J.* 511, 520, 846 *A.*2d 1244 (2004)). We address first the standard to be applied to plaintiff's claim that she is entitled to suit under AICRA either because the scar on her left shoulder constitutes "significant scarring," or because the metal plate and screw surgically implanted in her shoulder constitute "significant disfigurement." We then address defendants' contention in respect of the quantum of proofs adduced in the record in respect of plaintiff's claims. In doing so, we apply that standard to the record on appeal.

A.

Among the categories permitted to vault AICRA's limitation on lawsuit threshold are those cases, similar to this, involving a claim of "significant disfigurement or significant scarring." *N.J.S.A.* 39:6A–8a. To determine whether this case fits in that category, we must first inquire as to the Legislature's intent when it defined "significant disfigurement or significant scarring" as exemptions to the bar to recovery under New Jersey's no-fault automobile insurance coverage statutory scheme. We start that inquiry with the Legislature's direction that

[i]n the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless

inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language. Technical words and phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning.

[*N.J.S.A.* 1:1–1.]

Although susceptible to a plain language interpretation, the terms "significant disfigurement or significant scarring" can be construed to have "a special or accepted meaning in the law[.]" Therefore, we "turn to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction." *DiProspero v. Penn, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039.

Save for a reference in a colloquy between legislators to the effect that AICRA was patterned after "comparable Florida law," *id.* at 501, 874 *A.*2d 1039, nothing in the statute's legislative history breathes life into that phrase. However, because of that reference, we have also looked to that state's jurisprudence for guidance in defining "significant disfigurement or significant scarring." *See Van Horn v. William Blanchard Co.,* 88 *N.J.* 91, 97, 438 *A.*2d 552 (1981) (holding that "[a] legislative enactment patterned after a statute of another state is ordinarily adopted with the prior constructions placed on it by the highest court of the parent jurisdiction"). That search, too, proved fruitless.

Guidance can be gleaned from pre-AICRA cases and seemingly parallel workers' compensation settings. In *Falcone v. Branker,* 135 *N.J.Super.* 137, 342 *A.*2d 875 (Law Div.1975), the court defined the term "permanent significant disfigurement"—the term appearing in AICRA's predecessor statute—by adopting the definition announced by the Supreme Court of Illinois in an early workmen's compensation case:

The act does not provide compensation for every mark or scar, nor for every disfigurement. A disfigurement is that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner. [T]hat disfigurement must be both permanent and serious. It was certainly not intended under this provision to authorize compensation for every trifling mark that could be discovered by the closest inspection.

[*Id.* at 144–45, 342 *A.*2d 875 (quoting *Superior Mining Co. v. Indus. Comm'n,* 309 *Ill.* 339, 141 *N.E.* 165, 166 (1923)).]

The *Falcone* court concluded that the "use of the word 'serious,' as opposed to our statute's 'significant' disfigurement, [is] a distinction without a substantive difference." *Id.* at 145, 342 *A.*2d 875. Applying the canon of construction *noscitur a sociis*—"that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it[,]" *Black's Law Dictionary* 184 (7th ed. 1999)—the *Falcone* court noted that "the associated words [of New Jersey's no-fault automobile insurance statute] all connote injuries of a substantial nature." *Falcone v. Branker, supra,* 135 *N.J.Super.* at 147, 342 *A.*2d 875. It explained that "the disfigurement must be more than a trifling mark discoverable on close inspection, and that a disfigurement becomes serious when it substantially detracts from the appearance of the person disfigured" in order to vault the verbal threshold of New Jersey's no-fault automobile insurance act. *Ibid.*

More recently, the Appellate Division defined the term "significant disfigurement," which replaced the term "permanent significant disfigurement" in the 1988 amendments to the no-fault automobile insurance statute. *L.* 1988, c. 119, § 6. In *Puso v. Kenyon,* 272 *N.J.Super.* 280, 639 *A.*2d 1120 (App.Div.1994), the Appellate Division defined as "significant" a scar or disfigurement "if a reasonable person viewing the plaintiff's [condition] in its altered state would regard the condition as unattractive, objectionable, or as the subject of pity or scorn[.]" *Id.* at 288, 639 *A.*2d 1120 (quoting *Agudelo v. Pan American World Airways, Inc.,* 118 *Misc.*2d 186, 460 *N.Y.S.*2d 416, 419 (N.Y.Sup.Ct.1983)). The *Puso* court further explained "the test is objective proof of injury and consequent disability; it is not a subjective standard." *Id.* at 291, 639 *A.*2d 1120 (quotation and editing marks omitted). It noted that the factors relevant to this standard are

[f]rom an objective, empirical standpoint, the appearance, coloration, existence and size of the plaintiff's scars are undisputed matters of fact. These factors, along with shape, characteristics of surrounding skin, the remnants of the healing process, and the factors which may be developed as being cosmetically important on a case-by-case basis, are all objective factors which may be utilized by the court

in considering whether the scar is significant in a summary judgment motion in a verbal threshold case. Presumably many scars will not require judicial analysis.... Those scars which are subject to judicial analysis on a tort threshold motion must be scrutinized objectively by the court.

[*Ibid.* (citation and internal quotation marks omitted).]

The Appellate Division made clear that "a plaintiff intending to resist a motion for summary judgment as to a scar injury must appear in court on the return day of the motion" and that "[o]bviously a personal appearance before the court, either in open court or *in camera*, will be the optimum." *Ibid.* The *Puso* court also allowed that, "[i]n lieu of a personal appearance, professional-quality photographs authenticated as to date or a professional-quality videotape may be sufficiently reliable for submission to the court." *Id.* at 292, 639 *A.*2d 1120. In the end, however, "[t]he court's observations, which should in every case be articulated, ... will serve as the predicate for a determination whether the scar is objectively significantly disfiguring so as to defeat defendant's motion for summary judgment." *Ibid.*

The standard for scarring/disfigurement adopted in *Falcone* and later ratified in *Puso* also has been applied to actions brought under the Tort Claims Act provisions that limit recovery against a public entity for, among other things, "permanent disfigurement." *N.J.S.A.* 59:9–2(d). Thus, in *Hammer v. Twp. of Livingston,* 318 *N.J.Super.* 298, 308, 723 *A.*2d 988 (App.Div.1999), the Appellate Division expressly adopted the *Falcone* standard in the Tort Claims Act setting, stating that "[t]o determine whether a scar constitutes 'disfigurement,' we apply the definition used in *Falcone*[.]" As the *Hammer* court noted, we apply "an objective standard for determining whether a scar is a 'permanent significant disfigurement' under New Jersey's original 'no-fault' statute" and that "[t]hat standard informs our decision here." *Ibid.*

In the context of Tort Claims Act cases, we too have adopted the *Falcone/Hammer* objective standard, holding that, "in order to be considered a permanent disfigurement, a scar must impair or injure the beauty, symmetry, or appearance of a person, rendering the bearer unsightly, misshapen or imperfect, deforming her in

some manner." *Gilhooley v. County of Union,* 164 *N.J.* 533, 544, 753 *A.*2d 1137 (2000). Further, in the application of that standard, we have explained that a "number of factors should be considered, including appearance, coloration, existence and size of the scar, as well as, shape, characteristics of the surrounding skin, remnants of the healing process, and any other cosmetically important matters." *Ibid.*

We see no meaningful difference between the standard to be applied for overcoming the verbal threshold in no-fault automobile cases under AICRA, and the now well-known standard applied in pre-AICRA "permanent significant disfigurement" cases (*Falcone*), pre-AICRA "significant disfigurement" cases (*Puso*), or "permanent disfigurement" cases under the Tort Claims Act (*Hammer* and *Gilhooley*). Therefore, we explicitly adopt *Falcone's* and *Puso's* standard and hold that, to satisfy the limitation on lawsuit threshold of AICRA in respect of either "significant disfigurement or significant scarring," a plaintiff bears the burden of demonstrating that, on an objective basis, the disfigurement or scarring substantially "impair[s] or injure[s] the beauty, symmetry, or appearance of a person, rendering the bearer unsightly, misshapen or imperfect, deforming her in some manner." *Gilhooley, supra,* 164 *N.J.* at 544, 753 *A.*2d 1137. We further hold that, in making that objective determination, a number of factors are relevant, "including appearance, coloration, existence and size of the scar, as well as, shape, characteristics of the surrounding skin, remnants of the healing process, and any other cosmetically important matters." *Ibid.*

Because our application of this standard and its factors to this case is informed by the state of the record before us, we address next the quantum of proofs presented to the motion court, and then gauge those proofs in respect of the standard on summary judgment.

## B.

All parties before the motion court agreed that the relevant standard was whether "a reasonable fact finder could find

that this is a significant scarring, that materially affects her appearance, in some way." The motion court asked whether plaintiff had photographs to show the extent of the scarring. Plaintiff demurred, explaining that "I don't have photographs, but I brought [plaintiff], to show you the scar, that's the purpose of being here, and I think the case law calls for that inspection, if the Court so chooses."

To the extent it was applied to the proceedings before the motion court, that approach was correct. As recognized in *Puso*, as early as 1975 *Falcone* "articulated a requirement that a plaintiff intending to resist a motion for summary judgment as to a scar injury must appear in court on the return day of the motion." *Puso v. Kenyon*, 272 *N.J.Super.* 280, 291, 639 *A.*2d 1120 (App.Div. 1994).

However, holding that plaintiff's scar did not meet the limitation on lawsuit threshold of AICRA, the motion court made clear that plaintiff's burden on appeal was different. It remarked that "[i]f [the case] goes before the Appellate Division, I should think that photographs, or some other means would have to be presented to them for their evaluation of this. I don't have photographs here, today, it's unfortunate, it would be better to have a record fixed[.]"

The procedure outlined by the motion court—its direct observations and descriptions coupled with the need for photographs as a vehicle for meaningful appellate review—was tacitly endorsed by the Appellate Division in *Puso*. Noting that "the record on appeal does not reflect whether the motion judge actually saw the scar on the return day of the motion, nor does it reflect whether authenticated recent photographs of the scar were submitted to the judge for evaluation[,]" the *Puso* court held that "[t]he absence of a sufficient record prevents appropriate appellate review and accordingly, the order of summary judgment must be reversed and the motion must be reargued on remand." *Id.* at 292, 639 *A.*2d 1120. For the avoidance of doubt, we make explicit what *Puso* tacitly endorsed: in order to resist a claim that a plaintiff's injuries do not vault AICRA's "significant disfigurement

or significant scarring" limitation on lawsuit threshold, a plaintiff, at a bare minimum, must (1) present the plaintiff's disfigurement or scarring for direct observation by the trial court; (2) ensure that the record contains the trial court's description of the disfigurement or scarring; and (3) create and preserve for meaningful appellate review an accurate photographic record of the plaintiff's claimed disfigurement or scarring.

In this case, however, the Appellate Division did not remand the matter for the development of the record. Instead, the panel opted to exercise its original jurisdiction and reasoned that "based on [the motion court's] description, including not only the ... scar but the hardware that could be palpated, we conclude ... that the scarring/disfigurement is not so insubstantial that no rational fact-finder could determine that it does not impair plaintiff's appearance, rendering her unsightly, misshapen, or imperfect." *Soto v. Scaringelli, supra,* 384 *N.J.Super.* at 438, 894 *A.*2d 1229 (citations, internal quotation marks, and editing marks omitted). We disagree.

Requiring that the record on appeal contain both the motion court's description of its observations as well as preserved visual evidence of the scar or deformity claimed by a plaintiff to qualify as "significant disfigurement or significant scarring" allows for a more meaningful appellate review than what is provided by a description alone. For that reason, we have explicitly endorsed that rule. That said, and for purposes of this appeal only, we accept plaintiff's assertion that the motion court's description of plaintiff fairly represents her condition. Even accepting that assertion, however, we cannot agree with the Appellate Division's conclusion.

In respect of plaintiff's scar, the motion court explained that it examined plaintiff's left shoulder from a distance of three feet and that "[i]t was not readily apparent to me, it took some looking before I was able to see the scar there." It noted that "unless somebody were looking with great particularity at that shoulder, under a good strong light, that scar is not visible, it doesn't have

any keloid features to it at all, it is very thin, it's a little lighter than the surrounding skin[.]" In respect of plaintiff's disfigurement claim, the motion court discounted "that the hardware in her shoulder is of any consequence in this evaluation[,]" concluding that "I do not see any deformity, any bulges, and so forth, in her shoulder." These descriptions alone suffice to justify the motion court's conclusion that neither the metal plate and screw surgically implanted in plaintiff's left shoulder nor the scar resulting from that surgical procedure constituted disfigurement or scarring sufficiently "significant" to vault AICRA's verbal threshold.

The Appellate Division had no quarrel with the motion court's findings. It concluded, though, that the motion court misapplied the standard on summary judgment. Conceding that the motion court "clearly referred to the finding a jury would have to make, rather than his own," the panel nevertheless held that it could not "be certain that he focused on the 'no rational fact-finder' standard." *Ibid.* Again, we disagree.

Here, the motion court held that it was required "to make a determination as to whether or not any reasonable find[er] of fact, in a group of six people in this courtroom, would . . . find, that this is a scar of some significance, that it qualifies[.]" That standard does not differ from the *Brill* standard in any material respect. *See Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). Moreover, we are confident that the motion court hewed to the standard originally defined by plaintiff and agreed to by defendants, that is, whether "a reasonable fact finder could find that this is a significant scarring, that materially affects her appearance, in some way."

As plaintiff requested, we accept the motion court's description of plaintiff as a fair and accurate representation of her condition. From that description, applying the standard set forth in *Falcone,* based on the factors and on the objective basis explained by *Puso,* and viewing the facts in the light most favorable to plaintiff as required by *Brill,* we conclude that no rational fact-finder would find that plaintiff's scar or surgically implanted plate and screw

constituted disfigurement or scarring sufficiently "significant" to justify vaulting AICRA's limitation on lawsuit threshold and, thus, overriding AICRA's exemption from liability. We do so because we conclude that no rational fact-finder could find that plaintiff's scar or surgically implanted plate and screw rendered plaintiff's appearance unattractive, objectionable, or as the subject of pity or scorn, or that they, individually or collectively, substantially detract from plaintiff's appearance or impair or injure plaintiff's beauty, symmetry, or appearance so as to render her unsightly, misshapen, or imperfect. In those circumstances, only one legal conclusion is statutorily mandated: defendants are "exempted from tort liability for noneconomic loss to [plaintiff.]" *N.J.S.A.* 39:6A–8a.

## IV.

The judgment of the Appellate Division is reversed, and the judgment of the Law Division granting summary judgment in favor of defendants is reinstated.

*For reversal and reinstatement*—Chief Justice ZAZZAL and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.