934 A.2d 61 (2007)
396 N.J. Super. 373
Camie LIVSEY, Plaintiff-Appellant
v.
MERCURY INSURANCE GROUP, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 2007.
Decided October 24, 2007.
*62 Harvey Rothman, argued the cause for appellant (Gerald Poss & Associates, P.A., attorneys; Mr. Rothman, on the brief).
John J. Grossi, III, argued the cause for respondent (Dwyer, Connell & Lisbona, attorneys, Fairfield; Mr. Grossi, on the brief).
Before Judges COBURN, GRALL and CHAMBERS.
The opinion of the court was delivered by
COBURN, P.J.A.D.
Plaintiff, Camie Livsey, claims that she was struck by a bullet and severely injured in an apparently random, drive-by shooting. She filed suit in the Law Division under her New Jersey automobile insurance policy for uninsured motorist benefits ("UM"). Defendant, Mercury Insurance Group, obtained summary judgment, and Livsey appeals. The question presented is whether Livsey is entitled to pursue a claim for UM benefits. Since we are satisfied that Livsey offered sufficient evidence as to what occurred and that her statutorily mandated UM benefits apply to random, drive-by shootings, we reverse and remand for trial.
The factual record is quite sparse. Livsey's deposition indicates that on February 21, 2005, at about 3:15 p.m., as she stepped into her car, which was parked on Ellis Avenue in Irvington, a stray bullet struck her torso. According to the judge, Livsey's medical bills exceed $600,000.00. A police officer's report indicated that "[t]wo witnesses on the scene stated that they saw an older model Toyota Camry fleeing the scene," that there were no "shell casings" in the area, that the vehicle could be "identified," and that the case was "turned over to the Detective Bureau."
The judge found that Livsey provided sufficient evidence that the bullet was fired from the Toyota Camry. In that regard, we note that defendant has not argued that the police report was not competent evidence as to what had occurred. Although the issue is close, we are not inclined to disagree with this aspect of the judge's decision since the scenario he accepted for purposes of the motion appears more likely than the completely speculative alternatives offered by defendant. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). But we disagree with the judge's legal conclusion that UM is unavailable in a random, drive-by shooting.
The relevant statute, N.J.S.A. 17:28-1.1(a)(2), provides, in pertinent part, that all automobile liability insurance policies must include coverage to the insured for "bodily injury . . . caused by accident and *63 arising out of the ownership, maintenance, operation or use of such uninsured or hit and run motor vehicle. . . ." Thus, in essence, plaintiff must prove that her injuries were caused by an "accident," and that the accident arose "out of the operation or use" of an uninsured vehicle.
In the context of UM coverage, whether an incident causing bodily injury is an accident is determined from the insured's viewpoint. Shaw v. City of Jersey City, 174 N.J. 567, 572-77, 811 A.2d 404 (2002). In Shaw, the issue arose when a criminal suspect tried to avoid arrest by intentionally driving his uninsured car into plaintiff, a police officer. Id. at 570, 811 A.2d 404. The Court held that an injury caused by an intentional act may qualify as an "`accident' under N.J.S.A. 17:28-1.1," thereby entitling plaintiff to UM benefits. Id. at 569, 811 A.2d 404.
In ruling for the officer, the Court noted that the Unsatisfied Claim and Judgment Fund ("UCJF") provides compensation for both negligent and intentional acts. Id. at 575, 811 A.2d 404. The Court also emphasized that the UM statute serves two purposes: "to provide maximum remedial protection to the innocent victims of financially irresponsible motorists, and to reduce the drain on the financially-troubled Unsatisfied Claim and Judgment Fund." Id. at 571, 811 A.2d 404 (quotation and citation omitted). Therefore, the Court concluded that the term "accident" should not be construed more restrictively under the UM statute than it is under the UCJF. Id. at 577, 811 A.2d 404. Given that perspective, the shooting of Livsey was unquestionably an accident. Therefore, we turn to the critical question, did Livsey's accident arise out of the use of the uninsured motor vehicle?
In Lindstrom v. Hanover Ins. Co., 138 N.J. 242, 649 A.2d 1272 (1994), the Court considered that question in a drive-by shooting case which involved a claim for personal injury protection benefits ("PIP"). The Court noted the then applicable PIP eligibility standards, which provided, in relevant part, that PIP was available to one who "sustained bodily injury as a result of an accident * * * as a pedestrian, caused by an automobile or by an object propelled by or from an automobile." Id. at 245, 649 A.2d 1272 (quoting L. 1988, c. 119, § 3 (codified at N.J.S.A. 39:6A-4)). The Court's analysis began by reference to the basic principle that PIP coverage is a social necessity and, consequently, that the statute should be broadly construed in favor of coverage. Id. at 247, 649 A.2d 1272. Putting it another way, the Court said that "[i]nsureds are entitled to coverage in accordance with their objectively-reasonable expectations that are supported by any fair interpretation of the law." Ibid. The Court also explained that the statutory amendment adding reference to objects propelled by or from an automobile "eliminat[ed] the requirement that the vehicle literally strike the insured." Id. at 248, 649 A.2d 1272.
The Court then observed that PIP liability depended on their being a "substantial nexus" between the accident and the use of the automobile. Id. at 250, 649 A.2d 1272. In that regard, the Court said that PIP coverage applied to intentional as well as negligent acts. Ibid. The Court also said that the "act causing injury need not be actually foreseen but it must be both a reasonable consequence of the use of an automobile and one against which the parties would expect protection." Ibid. (citation omitted).
The Court found that plaintiff was entitled to PIP benefits, not simply because the bullet was propelled from the automobile, but because of the following nexus between the use of the automobile and the injury:

*64 [T]he automobile did more than provide a setting or an enhanced opportunity for the assault. In addition to allowing the assailant to be at the place of attack, it furnished the assailant with what he must have assumed would be both anonymity and a means of escape. The assailant would not likely have committed such an act of apparently random violence without the use of a car.
[Id. at 252, 649 A.2d 1272.]
The Court concluded its opinion by limiting its holding to "random, drive-by shootings," id. at 253, 649 A.2d 1272 (emphasis added), and by observing that
drive-by shootings have become an increasingly-common part of the American experience. Regrettably, a court can no longer say with any certainty that such occurrences are so removed from the American scene as not to be foreseeable. [Id. at 252-53, 649 A.2d 1272.]
We perceive no principled basis in these circumstances, a random, drive-by shooting, for treating UM coverage differently from PIP coverage on the central question of whether there was a sufficient nexus between the use of the automobile and the injury. The role played by the automobile in this case is no different from the role it played in Lindstrom, and we perceive no basis for concluding that there would be any difference between the objectively-reasonable coverage expectations under either statute, particularly since both statutes are to be construed broadly, extending coverage whenever reasonable.
We recognize that over two decades ago another panel reached a contrary conclusion on the availability of UM benefits in a random, drive-by shooting. Sciascia v. Am. Ins. Co., 183 N.J.Super. 352, 443 A.2d 1118 (Law Div.1982), aff'd, 189 N.J.Super. 236, 459 A.2d 1198 (App.Div.1983). That panel denied coverage for two reasons: because the accident could not be considered as having arisen out of the use of a vehicle, and because any expectation of coverage was not objectively reasonable. Id. at 358-59, 443 A.2d 1118. Since those conclusions are inconsistent with the Supreme Court's conclusions in Lindstrom and Shaw, we are obliged to reject Sciascia.
Reversed and remanded for trial.